IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID LOCKLAR,

        Plaintiff,

v.                                                                                         CIV 98-1059 M/KBM

KENNETH S. APFEL, Commissioner,
Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

This matter is before the Court on Plaintiff's Motion to Reverse or Remand For a Rehearing, filed June 3, 1999. The Commissioner of Social Security denied Locklar's application for supplemental security income after a hearing on remand from Chief Judge Conway. Having considered the arguments, pleadings, administrative record and relevant law, I find that the motion is not well taken and recommend that it be denied.

### A. Facts/Procedural Background

Mr. Locklar applied for supplemental security income May 17, 1993. He alleged a disability that commenced January 1, 1956, due to a head injury, headaches, and stress. The Administrative Law Judge (ALJ) found that Locklar was able to perform heavy work, and was therefore not disabled. [MIS 1-2] After the Appeals Council declined review, Locklar appealed to the United States District Court for the District of New Mexico. Judge Conway remanded the case to the Commissioner pursuant to a joint motion for an update of the medical records and for further evaluation of Locklar's impairments.

On remand, the ALJ determined that Locklar was not disabled on the grounds that his impairments did not meet or equal the Listing of Impairments and that he could perform unskilled, sedentary work available in the national economy. [MIS 2, AR 133-36] The Appeals Council again declined review, making the ALJ's decision the Commissioner's final decision for purposes of review. Locklar seeks this Court's review of the decision pursuant to 42 U.S.C. § 405(g).

## B. Standard of Review and Applicable Law

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) citing 42 U.S.C. § 423(d)(1)(A). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is or is not disabled. *Thompson*, 987 F.2d at 1486.

At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1420 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id*.

## C. DISCUSSION

Locklar asserts that the ALJ made three errors: (1) the ALJ's finding that Locklar's impairments did not meet or equal the Listing of Impairments at step three was not supported by substantial evidence; (2) the ALJ failed to develop the record adequately concerning the relation of his mental impairments to his functional limitations; and, (3) the ALJ erred at step five, in finding that Locklar's mental impairments did not prevent him from engaging in unskilled, sedentary work, without substantial evidence and contrary to law. I find that none of these points constitute reversible error.

*1. Substantial evidence supported the ALJ's finding that Locklar's impairments did not meet or equal the Listing of Impairments.*

"For a claimant to show that his impairment matches a listing, it must meet **all** of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521-530 (1989) (citations omitted) (emphasis original). The Listing of Impairments at Paragraph 12.05(C) provides that one with "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function" meets the required level of severity for the disorder of "mental retardation and autism." See 20 C.F.R., Pt. 404, Subpart P, App. 1, Listing 12.05(C).

3

Locklar points to an IQ test, which David M. Bogost, Ph.D. performed on him in May 1995, to show that he meets the 12.05(C) level of severity. On that test, Locklar achieved a full scale IQ of 68. [MIS 3] Nevertheless, Dr. Bogost himself discounted the validity of the test, concluding that the "score probably underestimates Mr. Locklar's optimal level of functioning because of cultural impoverishment, educational deprivation, test related anxiety, and reduced concentration level." [AR 180] Considering that the psychologist who administered the test questioned its validity, the ALJ was certainly reasonable in discounting the result. Conversely, if the ALJ had adopted the results that Dr. Bogost himself had rejected, that decision would have been the more questionable, especially in light of the 12.05(C) mandate that the IQ be "valid."

Moreover, Locklar achieved a full scale IQ of 77 on a test September 15, 1997, given by Clifford Morgan, Ph.D. [AR 164] Charles Bradshaw, Ph.D., after evaluating Locklar June 9, 1993, estimated that Locklar's IQ was in the 80-90 range. [AR 85] Thus, the three psychologists who evaluated Locklar, including Dr. Bogost, agreed that Locklar's IQ was higher than the 12.05(C) level under which a claimant is presumed disabled. The scientific conclusions of these three psychologists constitute substantial evidence supporting the legal conclusion of the ALJ that Locklar's mental impairments did not meet or equal the severity of Listing 12.05(C).

*2. The ALJ adequately developed the record concerning the relation of Locklar's mental impairments to his functional limitations.*

Locklar complains that the ALJ erroneously refused to ask Dr. Morgan to complete a mental assessment of Locklar's ability to do work-related activities. He argues that this refusal violated Social Security Ruling 85-16, which provides that

> Reports from psychiatrists, and other physicians, psychologists, and other professionals working in the field of mental health should contain the individual's medical history, mental status evaluation, psychological testing, diagnosis, treatment prescribed and response, prognosis, a description of

4

>    the individual's daily activities, and a medical assessment describing ability
>    to do work-related activities.

Specifically, he claims that the record should have contained an assessment of his ability to do work-related activities.

There is, however, substantial evidence in the record concerning Locklar's ability to work despite his impairments. Dr. Bradshaw found that Locklar had a good ability to follow work rules, relate to co-workers, use judgment, interact with supervisors, deal with stress, function independently, while his abilities to deal with the public and maintain attention were fair. [AR 87] Significantly, the only serious limitation Dr. Bradshaw noted was Locklar's fair to poor ability to remember and carry out detailed and complex job instructions. [AR 88]

Dr. Bradshaw's report is consistent with the evidence of record including Dr. Bogost's May 1, 1995 evaluation. Dr. Bogost found that Locklar was "capable of acquiring training in semi-skilled or skilled trades commensurate with his needs and limitations." [AR 181] It is also noteworthy, as the Commissioner points out, that not one doctor has found Locklar to be disabled. [RES 6] Finally, the vocational expert testified that Locklar could perform simple, unskilled, sedentary jobs that existed in the region and in the national economy. [AR 194-96]

I am somewhat concerned, however, that the ALJ may not have completely followed the March 4, 1997 Joint Motion for Remand. The Joint Motion provided in relevant part:

>    The Appeals Council wishes to remand this case to an [ALJ] in order to
>    update the medical record, obtain a mental status examination with
>    psychological testing and a medical assessment. The ALJ will also obtain
>    an internal medicine consultative examination with a medical assessment
>    concerning plaintiff's physical impairments. Further, the ALJ should be
>    instructed to further evaluate plaintiff's physical and mental impairments
>    and, if necessary, obtain evidence from a vocational expert.

[AR 148] There appears to have been no internal medicine examination and I must determine if

5

its absence undermines the decision. The updated information available on remand included a psychological/mental examination by Dr. Clifford Morgan October 18, 1997 [AR 160-66]; an updated medical record with an assessment of Locklar's physical impairments by Dr. Paul Greenbaum, M.D. [AR 153-59]; a further evaluation by the ALJ of Locklar's physical and mental impairments [AR 133-35, 137-40]; and evidence from a vocational expert [AR 194-98].

Locklar asserts that the chief error lies in the ALJ's failure to ask Dr. Morgan to give a mental assessment of his ability to do work-related activities. [MIS 7, AR 199] While such an assessment would probably have been useful, there is no reason to conclude that it would have changed the result. In reviewing the record as a whole, as set forth above, there was substantial evidence for the ALJ to conclude that Locklar was able to perform some kind of gainful employment, though not his previous work. *See Castellano v. Sec'y of Health & Hum. Serv.*, 26 F.3d 1027, 1028 (10th Cir. 1994) (factual findings of Secretary reviewed on whether substantial evidence in the record viewed as a whole supports them). Conversely, there was no medical testimony that Locklar's mental or physical impairments prevented him from working.[1]

> 3. <u>The ALJ correctly found at step five that Locklar's mental impairments did not prevent him from engaging in unskilled, sedentary work.</u>

Locklar contends that he cannot do even simple, unskilled work and relies upon Dr. Bradshaw's finding that Locklar would need moderate supervision to stay on task. [MIS 9, AR 84] As Locklar contends, a claimant who requires an unusual amount of supervision is not performing substantial gainful activity. 20 C.F.R. § 416.973(b)(1998); *Boyes v. Sec'y of Health*

---

[1] Moreover, any disagreement between Locklar and the ALJ concerning the ALJ's reasons for not requesting a mental assessment form under *Cruse v. Dept. of Health & Hum. Serv.*, 49 F.3d. 614 (10th Cir. 1995) (form hampering court's and ALJ's review because it does not match § 12.04 and the PRT form) is immaterial, since the ALJ's decision already stands on substantial evidence.

*& Hum. Serv.*, 46 F.3d 510, 512 (6th Cir. 1994). It takes quite a stretch, however, to bring the need for "moderate" supervision into the realm of "unusual." The contrasted meanings of those two words should be too obvious to need discussion.

In any case, Dr. Bradshaw concluded that Locklar had good abilities to follow work rules, use judgment, interact with supervisors, deal with stress, function independently, maintain concentration, understand, remember and carry out simple instructions. [AR 87-88] Indeed, Dr. Bogost indicated that, although Locklar was unable to do his previous work as a ranch hand, he could be retrained to perform skilled or semi-skilled light or sedentary work. [AR 182]

Finally, Locklar contends that the ALJ should have made specific findings regarding how Locklar's bizarre behaviors – such as inappropriate and socially immature behaviors – affected his ability to work. [MIS 9-10, AR 83-85, 163, 181] Yet the doctors who evaluated Locklar and noted these behaviors *still* arrived at their conclusions that he could do simple, unskilled sedentary work. No doctor found that these behaviors significantly limited his ability to work. Even Locklar fails to demonstrate that his ability to work was compromised by these behaviors.

In closing, I note that Locklar has not argued that there were no unskilled, sedentary jobs in the region or in the national economy. He simply argued that he could not do even those jobs. As such, a detailed discussion of the ALJ's step five analysis is unnecessary except as it concerned the evidence supporting the conclusion that Locklar was indeed able to do simple, unskilled sedentary work.

### D. CONCLUSION

For the reasons stated above, I find no error in the ALJ's decision and recommend to the District Judge that it be affirmed in full. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1).

_____
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**Attorneys for Plaintiff:**
Gary J. Martone, Esq.
A. Michelle Baca-Kleban, Esq.
Francesca MacDowell
2501 San Pedro Dr., NE, Suite 111
Albuquerque, NM  87110


**Attorneys for Defendant:**
Joan M. Hart, Esq.
P.O. Box 607
Albuquerque, NM  87103

Katauna J. King
1301 Young St., Suite 130
Dallas, TX  75202